## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  14-cv-61472-WPD

MARTHA MAE EDGERTON,

      Plaintiff,

vs

CITY OF PLANTATION, ROBERT
KROGMAN, JEFFREY JONES and
RICHARD MAHER

      Defendants.

_____/

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
### INCORPORATED MEMORANDUM OF LAW

Defendant, CITY OF PLANTATION ("the City"), by and through its undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rule 56.1, moves for the entry of final summary judgment, and in support, states[1]:

### I.  Introduction

1.     Plaintiff, MARTHA MAE EDGERTON ("Edgerton"), sued the City alleging a panoply of claims.  After the Court granted the City's partial motion to dismiss fourth amended complaint, only two claims remained: (1) hostile work environment based on race and sex and (2) a retaliatory hostile work environment. [DE 57, DE 59, DE 64].

---

[1] The City has filed a Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment concurrently with this Motion.  The "undisputed facts" upon which this motion is based are cited in this memorandum as (Facts at ¶ __.).

2.     The City is entitled to judgment as a matter of law on both claims because Edgerton can not demonstrate harassment sufficiently severe and pervasive to rise to the level of a constitutional deprivation.  Also, the City has established a valid <u>Faragher</u> defense, and Edgerton's claims fail as a matter of law.

3.     The City is entitled to judgment on the retaliation claim for an additional reason.  Edgerton simply did not engage in protected activity and no adverse employment action occurred.

**WHEREFORE**, Defendant, CITY OF PLANTATION, respectfully requests entry of an Order granting final summary judgment against Plaintiff, MARTHA MAE EDGERTON, together with such further relief the Court deems just and proper.

## II.  Memorandum of Law

### A.  No Hostile Work Environment Claim

To establish a *prima facie* case for a hostile work environment, Edgerton **must** present evidence that (1) she belongs to a protected class, (2) she was subject to unwelcome harassment, (3) the harassment was based on her sex, (4) the harassment was sufficiently severe and pervasive to alter the terms of her employment and create an abusive working environment, and (5) there exists a basis for holding the employer liable. <u>Hulsey v. Pride Rests., LLC</u>, 367 F.3d 1238, 1244 (11th Cir. 2004).  *"Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive, and harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive."* <u>Richardson v. Dougherty County</u>, 185 Fed. Appx. at 790-91.

To prevail on the fourth factor, a plaintiff must offer proof that *"the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."* Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (internal citations and quotation marks omitted); Gupta, 212 F.3d at 583. Moreover, a plaintiff must produce evidence that the harassment is *"both subjectively and objectively severe and pervasive."* Johnson v. Booker T. Washington Broad. Svc. Inc., 234 F.3d 501, 509 (11th Cir. 2000). That is, a plaintiff must establish *"not only that [s]he subjectively perceived the environment as hostile and abusive, but also that a reasonable person would [so] perceive the environment."* Gupta, 212 F.3d at 583.

To determine whether harassment is objectively severe and pervasive, the Court must consider: *"(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."* Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999); Hulsey v. Pride Restaurants, LLC, 367 F.3d 1238, 1247-48 (11th Cir. 2004).

The *"severe or pervasive"* element *"tests the mettle of most [] harassment claims."* Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000). When it is applied properly, it will *"filter out complaints attacking the ordinary tribulations of the workplace, such a sporadic use of abusive language, gender-related jokes, and occasional teasing."* Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). The fourth element is only satisfied *"[w]hen the workplace is **permeated** with discriminatory intimidation, ridicule, and*

*insult."* Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993) (emphasis added).

*Sub judice*, Edgerton only identified five purported incidents over her six months of employment which she perceived to be sexual harassment:

> *"Robert Krogman called me to his cubicle. There was a pin-up there, a bikini pin-up, and he was referring to -- he said, 'This is my wife,' and he was pointing at titties. He wanted me to see her, his pin-up."*

> Richard Maher left a Rosemary plant on her desk and said *"Now you have to date me."*

> On another day, Richard Maher walked by her desk and said, *"I can French you."* And then he started wagging his tongue.

> An unidentified crew member said, *"I bet that pussy good."*

> Jeffrey Jones said to a crew worker, *"It looks like you're dicking around. It looks like you're dicking around, Glenn. You're dicking around."*

App. 1, pp. 27, 29, 30.

Edgerton's sexually hostile work environment claim fails because she has not identified either frequent **or** severe conduct. Five purported incidents occurred over a six-month period. No reasonable person could conclude that any City employee engaged in **frequent** harassment of Edgerton. Moreover, Edgerton admits that the conduct was not **severe** either: no City employee ever physically threatened her. App. 1, p. 38. ("*Q. Did he ever threaten you with bodily harm?  A.  He never said -- no, he never told me he was going to do some kind of harm to my person.*")

Likewise, the purported race-based harassment was neither severe nor pervasive. Over the six-month period, Edgerton only identified two incidents that she perceived to be

racially inappropriate:

> *"We have the Trayvon Martin incident with the protests that were going on. There was some of the foremen, and they were in the conference room watching the protest on TV. And Robert Krogman made the racial remark that Trayvon was a criminal. He deserved what he got because he's taller than Zimmerman. And he also made a comment that 'Where's the national guard to remove them people -- those people?'"*

> *"Mr. Jones made a comment that, you know, 'The founding fathers paved the way for people in this country.'"*

App. 1, pp. 31-33.  On their face, neither statement appears to be racially-related.

As a matter of law, Plaintiff's allegations of improper conduct are insufficient to establish that *"the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."*  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21(1993) (internal citations and quotation marks omitted).

Courts have found far more egregious sex and race-based conduct than that alleged by Plaintiff to be insufficient as a matter of law to establish the severe and pervasive element of a valid hostile work environment claim. See, e.g, Mendoza v. Borden, Inc., 195 F.3d 1238, 1242-1243 (11th Cir. Fla. 1999)(affirming summary judgment in favor of employer because the frequency of the harassing conduct was *"lacking,"* where over an 11-month period, the supervisor told the female plaintiff, *"I'm getting fired up"*; rubbed his hip against the plaintiff's hip while touching her shoulder and smiling; twice made a sniffing sound while looking at the plaintiff's groin, and *"constant[ly]"* stared at the plaintiff in a *"very obvious fashion."*); Scott v. Pizza Hut of America, Inc., 92 F. Supp. 2d 1320, 1326 (M.D. Fla.

2000)(entering summary judgment in favor of employer because the conduct was not severe or pervasive where a female plaintiff complained about repeated use of rude language, co-workers stated, *"if [the plaintiff would] go out and get some sex, she wouldn't be so bitchy,"* co-workers made obscene gestures, one male co-worker laid a female *"on the floor and put[ting] her hands on her body,"* and the manager permitted rap music with foul lyrics to be played in the restaurant); Guthrie v. Waffle House, Inc., 460 Fed. Appx. 803, 804-805 (11th Cir. 2012) (affirming entry of summary judgment finding that conduct was not severe and pervasive where the harasser grabbed the claimant *"on [her] butt"* two to five times; *"talked dirty"* to her, including stating five times that he wanted to *"fuck"* the claimant and *"lick"* her *"all over"*; asked her on a date 10 to 20 times; and told her that she *"could just pee in my mouth,"* after she requested a restroom break.); Barrow v. Ga. Pacific Corp., 144 Fed. Appx. 54, 57 (11th Cir. 2005)(concluding that evidence of *"displays of the rebel flag on tool boxes and hard hats, the letters 'KKK' on a bathroom wall and on a block-saw console, and a noose in another employee's locker,'"* as well as several threats to *"kick plaintiff's 'black ass'"* or threats that if he looked at a white girl he was going to get "cut," and the use of racial epithets including *"nigger," "boy,"* and *"black boy,"* did not amount to *"severe and pervasive"* harassment).

In the end, Edgerton has ***not*** alleged conduct based on either her sex or her race that would lead a reasonable person to believe that the alleged harassment objectively altered the terms or conditions of her employment. The alleged conduct was not frequent, severe, or threatening and it did not interfere with Edgerton's already poor performance. Because Edgerton has alleged no conduct, which would permit an objectively reasonable person to

find that the City created a hostile or abusive environment, the City is entitled to judgment on both claims.

### B.  The City Has Established Its Faragher Defense

To establish the defense articulated in <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807-808 (1998), an employer must show that: (1) it exercised reasonable care to prevent and promptly correct any harassing behavior, and that (2) the employee unreasonably failed to take advantage of the preventative or corrective measures provided by the employer. Id. at 807.  When an employer has provided an effective procedure for reporting complaints and has made it available to the employee without cost or risk, and the employee unreasonably fails to avail herself of the procedure, the employee may not recover the damages that could have been avoided by using the procedure.  Id. at 806-807.

*Sub judice*, the City has established its <u>Faragher</u> defense. The City possessed procedures designed to prevent and correct discriminating and harassing behavior.  Despite Edgerton's knowledge of these procedures, she failed to follow them.  Pursuant to the City's policy, Edgerton was required to report any incidents, concerns, or questions about race or sex-based discrimination and harassment to the City's Human Resources Director.  Facts at ¶¶ 11-12. Significantly, Edgerton never made any complaints about race or sex-based discrimination or harassment in accordance with the policy. Facts at ¶ 13.  Despite its well-promulgated policies that were made available to Edgerton, the City was not provided with proper notice of the alleged race and sex-based harassment and discrimination.  The City is entitled to judgment as it has established its <u>Faragher</u> defense.

## C.  **No Retaliation Claim as Edgerton Did Not Engage in Protected Activity**

Edgerton's retaliatory hostile work environment claim fails for an additional reason. To establish claim for retaliation under Title VII, a plaintiff must show that (1) she engaged in a statutorily-protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relationship between the two events. Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir.1997) (per curiam); Donovan v. Broward County Bd. of Comm'rs, 974 So. 2d 458, 460 (Fla. 4th DCA 2008).   Statutorily protected expression includes (1) filing complaints with the EEOC and (2) complaining to superiors about sexual harassment. See Rollins v. State of Fla. Dept. of Law Enforcement, 868 F.2d 397, 400 (11th Cir.1989).

*"[O]pposition claims usually involve activities such as making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of coworkers who have filed formal charges."* Carter v. Health Mgmt. Assocs., 989 So. 2d 1258, 1263 (Fla. 2nd DCA 2008). *"[A]n employee's statement or communication cannot be deemed to be in opposition to an unlawful employment practice unless it refers to a specific practice of the employer that is allegedly unlawful. 'Vagueness as to the nature of the grievance … prevents a protest from qualifying as a protected activity.'"* Guess v. City of Miramar, 889 So. 2d 840, 847(Fla. 4th DCA 2004) (quoting Dupont-Lauren v. Schneider (USA), Inc., 994 F. Supp. 802, 823 (S.D. Tex. 1998).

*Sub judice*, it is undisputed that the City adopted a policy which expressly prohibits discrimination and retaliation on the basis of gender and race. Facts at ¶¶ 10-11. Edgerton failed to report any discriminatory conduct to the City's Human Resources Department and

also failed to report the conduct to her supervisor at any time.  Facts at ¶ 13.

Because Edgerton admits that she did not engage in any affirmative effort to "oppose" any unlawful employment practice on the part of the City, the claim fails.  App. 2, ¶ 11; App. 1, p. 41 ("*Q.  You never actually went to the human resources director to report any type of improper conduct; correct? A.  No.  Q.  That is correct?  A.  That's correct.*").

As a result, the City is also entitled to judgment.

**WHEREFORE**, Defendant, CITY OF PLANTATION, respectfully requests entry of an Order granting final summary judgment on all claims asserted by Plaintiff, MARTHA MAE EDGERTON, together with such further relief the Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of June, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, P.A.
Attorneys for Defendants
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Telephone.:   (954) 463-0100
Facsimile.:   (954) 463-2444


By:   *s/Christopher J. Stearns*
       E. BRUCE JOHNSON
       Florida Bar No.:  262137
       CHRISTOPHER J. STEARNS
       Florida Bar No.: 557870

## <u>SERVICE LIST</u>

**ALEXIS D. BENJAMIN, ESQ.**
ALEXIS D. BENJAMIN, PLC
**Attorney for Plaintiff**
18441 NW 2nd Ave., Suite 218D
Miami Gardens, FL 33169
Tel: (786) 320-8478
eservice: ourcommunitylaw.e.service@gmail.com
email: ourcommunitylaw@gmail.com

---

**E. Bruce Johnson, Esquire**
**Christopher J. Stearns, Esquire**
JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER & HOCHMAN, P.A.
Attorneys for Defendants
2455 East Sunrise Boulevard., Suite 1000
Fort Lauderdale, Florida 33304
Telephone.:   (954) 463-0100
Facsimile.:   (954) 463-2444
johnson@jambg.com & young@jambg.com
stearns@jambg.com & Blouin@jambg.com

---